IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS P. HARMON, JR.,<br><br>     Petitioner,<br><br>  vs.<br><br>FRED FOULK, Warden, High Desert State Prison,[1]<br><br>     Respondent. | No. 2:08-cv-01218-JKS<br><br>MEMORANDUM DECISION |

  Morris P. Harmon, Jr., a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Harmon is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at High Desert State Prison. Respondent has answered, and Harmon has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On January 24, 2003, Harmon was charged with forcible rape and kidnapping for the purpose of committing rape. The information further alleged that Harmon had two prior convictions for sex offenses and three prior convictions for serious felony offenses. On the same day, Harmon pled not guilty and denied the prior conviction allegations.

  On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying Harmon's case:

> On the evening of February 24, 1996, 17-year-old S.B. attended a party at a friend's house in South Sacramento. Sometime between 10:00 and 11:00 p.m., she left the party on foot for another friend's house in the area. On the way, S.B. was grabbed from behind while on a sidewalk in front of some buildings on Florin Road near a Pizza

---

  [1]  Fred Foulk, Warden, High Desert State Prison, is substituted for Derral G. Adams, former Warden, California State Prison, Corcoran. FED. R. CIV. P. 25(c).

Hut restaurant.  The assailant put one hand over S.B.'s mouth and the other around her waist and began walking her through a breezeway to the back of the buildings.  S.B. thought this was one of her friends playing a trick on her and told the person to quit. The assailant, whom S.B. later determined to be an African-American male, told her to "shut up" and "keep walking."

The man dragged S.B. a distance of approximately 224 feet to an area behind the buildings.  He threw her on the ground and began pulling her clothes off.  S.B. screamed at him to stop.  With S.B. lying on her stomach, the man attempted to penetrate her anus with his penis.  He was unsuccessful.  He then turned S.B. over and inserted his penis into her vagina.  As S.B. struggled, the man hit her on the head with a rock or a brick and with his hand.  She "blacked out a little bit."  After approximately five minutes, a woman walked into the area behind the buildings and the man got off S.B. and fled.

When S.B. later reported the assault, she indicated the man was approximately 5'6" tall, weighed 150 pounds, and had a shaved head and a "very skinny framed face."  However, she also reported the man had a scarf over his face during the assault.  She told her sister and the police that somebody tried to rape her.  When she reported the assault to her mother, she did not say she had been raped.  S.B. later explained she had been embarrassed to admit the man succeeded in raping her.  S.B. did not know if the man ejaculated in or on her, although she told the police she did not believe he did.

At 5:00 a.m. the next morning, Laurie Parker [sic], a member of the Sexual Assault Forensic Examiner (SAFE) team at U.C. Davis Medical Center (UCDMC), conducted a sexual assault examination on S.B.  Parker prepared a report in which she noted no external genitalia findings and indicated she observed no sperm in or around the victim's vagina.  Swabs were used to obtain biological samples from the victim's vagina and cervix.

The record contains no indication of further investigation on the case until 2002, when the matter was reopened.  Analysts at the Sacramento County District Attorney Laboratory of Forensic Services (the Sacramento Laboratory) detected semen on the vaginal swabs taken from the victim in 1996 and spermatozoa on one of the vaginal swabs and one of the cervical swabs. Criminalist Mark Eastman of the Sacramento Laboratory extracted DNA from the samples and generated a 13-locus DNA profile.  The Sacramento Laboratory then requested a databank search by the California Department of Justice to compare the DNA profile prepared by Eastman with those contained in a convicted offender databank.  The search turned up a match with DNA profile obtained from a biological sample taken from [Harmon] while in custody on an unrelated matter.

Police officers arrested [Harmon] and obtained a saliva sample for further DNA testing.  Eastman obtained a 13-locus DNA profile from this sample and found that it matched the DNA profile taken from the victim's vaginal swab.

S.B. was unable to identify [Harmon] as the assailant in a photographic lineup.  In 1996, [Harmon] was 5'10" tall and weighed 175 pounds.  In 1996, [Harmon] lived within one mile of the crime scene.

*People v. Harmon*, No. C048591, 2007 WL 1366776, at *1-2 (Cal. Ct. App. May 10, 2007).

Harmon moved to exclude the DNA evidence on the ground that "the anticipated statistical interpretation of the DNA evidence . . . , when it relates to a search through a database, . . . has not been generally accepted by the scientific community" as required by California case law. He subsequently moved to suppress evidence of his DNA profile as "the fruit of an unlawful seizure of his blood, saliva or any other bodily fluids that were used in DNA testing." He further sought to dismiss the case, alleging that it reached beyond the statute of limitations and/or violated Harmon's constitutional due process rights. The court denied Harmon's motions on November 1, 2004.

The following day, Harmon proceeded to jury trial. At trial, Leslie Schmidt, a nurse practitioner with UCDMC's SAFE team, testified about the sexual assault examination conducted on the victim and identified the SAFE report prepared by Lorie Parker. *Harmon*, 2007 WL 1366776, at *2. Mark Eastman testified about the DNA match and opined that the chance of a random match based on a 13-locus DNA profile was one in 190 quadrillion in the African-American population. *Id.* The jury was provided photographs of Harmon taken in or around 1996 that showed him with hair on his head and facial hair. *Id.* Harmon did not testify. *Id.*

At the conclusion of trial, the jury found Harmon guilty of both counts. Harmon waived jury trial on the prior convictions and the court subsequently found those true.

The trial court sentenced Harmon under the three strikes law to a total indeterminate prison term of 75 years to life on the forcible rape conviction and a consecutive total determinate prison term of 15 years on the prior convictions. The court imposed and ordered stayed an indeterminate prison term of 33 years on the kidnapping for the purpose of committing rape

conviction. On the same date, Harmon was sentenced to a consecutive term of 2 years and 8 months and a concurrent term of 2 years for failing to register as a convicted sex offender in two separate, unrelated cases.

Through counsel, Harmon appealed his conviction, arguing that: 1) his trial counsel was ineffective for failing to challenge on the basis of the confrontation clause the admission of DNA evidence; 2) the trial court erred in failing to suppress Harmon's motion to suppress DNA databank evidence; 3) the trial court erred in failing to *sua sponte* instruct the jury on attempted rape as a lesser included offense to rape; 4) the trial court erred in failing to *sua sponte* instruct the jury on simple kidnapping and attempted aggravated kidnapping as lesser included offenses to aggravated kidnapping; and 5) the trial court selected upper terms in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The Court of Appeal affirmed Harmon's conviction and sentence in a reasoned, unpublished opinion on September 25, 2006. *People v. Harmon*, No. C048591, 2006 WL 2723925, at *12 (Cal. Ct. App. Sept. 25, 2006). Harmon petitioned to the California Supreme Court for review, which was denied without prejudice to any relief to which Harmon might be entitled under then-pending *Cunningham v. California*, 549 U.S. 270 (2007).

On February 23, 2007, the California Court of Appeal granted Harmon's motion to recall the remittitur, vacated the decision, and reinstated Harmon's appeal. The appellate court additionally ordered supplemental briefing addressing *Cunningham*. After briefing by both parties, the appellate court affirmed Harmon's conviction and sentence in a reasoned, unpublished decision. *Harmon*, 2007 WL 1366776, at *14. Harmon sought review in the

4

California Supreme Court. After initially granting review, the supreme court dismissed the petition on September 12, 2007, in light of its decision in *People v. Black*, 161 P.3d 1130 (Cal. 2007).

Harmon timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on May 29, 2008. After counsel was subsequently appointed to represent Harmon, Harmon filed an Amended Petition on May 16, 2011.

## II. GROUNDS/CLAIMS

In his counseled Amended Petition, Harmon asserts four grounds for relief. First, he argues that his trial counsel rendered ineffective assistance by failing to raise a confrontation clause challenge to the DNA evidence presented at trial. He next contends that the trial court violated his Fourth Amendment rights by denying his motion to suppress DNA database evidence. In claim 3, Harmon alleges that the trial court erred by not *sua sponte* instructing the jury on the lesser included offenses to rape and aggravated kidnapping. Finally, Harmon claims that the trial court erred by imposing the upper term in violation of *Apprendi* and *Blakely*.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

5

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). If the last reasoned state court

decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim 1: Ineffective Assistance of Counsel–Confrontation Violation

As previously noted, Lorie Parker conducted the sexual assault examination of the victim in 1996 and created the resulting report. However, Parker did not testify at trial. Instead, her record was admitted into evidence as a business record and another member of the SAFE team, Leslie Schmidt, testified about its contents. Harmon argues that his trial counsel was ineffective for failing to object to Schmidt's testimony on the ground that it violated Harmon's right to confrontation.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

7

393-95.  Thus, Harmon must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).  In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

At the time of Harmon's conviction in 2004, the clearly established Supreme Court law governing a Sixth Amendment claim right to confrontation was *Crawford v. Washington*, 541 U.S. 36 (2004).  *Crawford* held that when the prosecution seeks to admit "testimonial evidence" from a witness who is not present at the trial, "the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination."  *Id*. at 68.  The *Crawford* court did not define the term "testimonial," but gave some guidance, stating that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id*.

During the pendency of Harmon's case in federal court, however, the United States Supreme Court decided *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which extended *Crawford*'s reasoning to at least some kinds of scientific tests by holding that certificates which confirmed the substance seized from the defendant was cocaine were "testimonial" under *Crawford* and could not be admitted absent the testimony of the person who performed the tests. *Id.* at 318. The Supreme Court specifically rejected the argument that the certificates were business records and therefore admissible pursuant to the business records exception to the hearsay rule. *Id.* at 321. The Court also rejected the argument that because the certificates were the product of "neutral scientific testing," they were not testimonial. *Id.* at 318. Harmon relies on *Melendez-Diaz* to argue that "[a]ny doubts about whether forensic and laboratory reports prepared for use during litigation are 'testimonial' in nature were conclusively dispelled by the Supreme [C]ourt."

But *Melendez-Diaz* was decided five years after Harmon's conviction. Harmon therefore cannot rely on this case to demonstrate that the result of the proceeding would have been different absent the error. The weight of the authority was squarely against applying *Crawford* to laboratory reports at the time of his conviction. Indeed, in 2007, the California Supreme Court relied on authority existing at the time of Harmon's conviction to conclude that such evidence was not testimonial under *Crawford*. *See People v. Geier*, 161 P.3d 104, 135-37 (Cal. 2007). Thus, there is no likelihood that a Sixth Amendment objection to Schmidt's testimony would have been sustained at the trial court level. Nor is there any likelihood that the issue would have been resolved differently on appeal given the subsequent ruling *Geier*. Moreover, as the Court of Appeal noted, Harmon has not established that even if such an objection had been

9

sustained, the prosecution could not have produced Parker, who performed the vaginal examination and drafted the report, to testify at trial, thus curing any Sixth Amendment confrontation clause problem:

> [Harmon's] argument assumes that, if counsel had raised a confrontation clause challenge, and the challenge had merit, the DNA evidence would have been excluded. That assumption is unwarranted. The best [Harmon] could have hoped for was that the court would exclude the SAFE report and preclude Leslie Schmidt from testifying about it. In that case, counsel may reasonably have assumed the prosecution then would have procured the testimony of Laurie [sic] Parker herself. Although we do not know what Parker would have said, there is no reason to believe she would have testified differently than Schmidt about whether the biological samples on the vaginal and cervical swab were obtained from the victim according to normal SAFE team practices. Parker would have been able to use the report to support her testimony.

*Harmon*, 2007 WL 1366776, *4.

Harmon therefore cannot prevail on his ineffective assistance of counsel claim.

Claim 2: Evidentiary Error–Erroneous Denial of Motion to Suppress DNA Evidence

Harmon next claims that the trial court violated his Fourth Amendment rights by denying his motion to suppress DNA databank evidence. Harmon does not challenge the extraction of biological samples but rather the retention of the samples after he was discharged from parole. Harmon contends that "[t]he State simply cannot meet its burden of justifying the warrantless search followed by keeping and using the fruits of that search years after any legitimate, particularized special need for it had vanished."

But Harmon's argument is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity

to litigate his Fourth Amendment claim.  *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."  *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  California provides such an opportunity, *see* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990), and thus Harmon's Fourth Amendment claim is not cognizable here.

Moreover, the Ninth Circuit has expressly declined to address whether the Fourth Amendment requires disposal of biological samples once an individual is discharged from parole.  *See United States v. Kriesel*, 604 F.3d 1124, 1125 n.1 (9th Cir. 2010) ("[W]e express no view on[] the merits of the question of whether the Fourth Amendment requires that a [DNA databank] entry be erased once supervised release has ended.").  Harmon therefore cannot show that the California Court of Appeal's rejection of his Fourth Amendment challenge was either contrary to or an unreasonable application of federal law.  Harmon is not entitled to relief on his Fourth Amendment claim.

<u>Claim 3: Instructional Error–Lesser Included Offenses</u>

Harmon additionally contends that the trial court erred by not *sua sponte* instructing the jury on the lesser included offenses to rape and aggravated kidnapping.  Harmon asserts that an instruction on attempted rape was warranted because the victim told people at the time of the offense that someone had tried to rape her but did not penetrate her.  He further contends that "the short movement of the victim of only about 224 feet might not have been sufficient to support the aggravated kidnapping charge."  The Court of Appeal rejected these contentions on

11

direct appeal, concluding that the evidence did not support lesser included offense instructions on either charge. 2007 WL 1366776, at *10-12.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases. The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). Accordingly, the decision of the California courts denying Harmon relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*. Nevertheless, the Ninth Circuit has recognized that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States Supreme Court precedent. *Solis*, 219 F.3d at 929.

Further, Harmon did not defend this case on the theory that he committed a simple kidnapping or only attempted to commit the offenses. Rather, his defense was based on the lack of credibility of the victim. Because an instruction on the lesser included offenses was not consistent with Harmon's defense and was not supported by the evidence, no due process

violation arose from the failure to instruct the jury on the lesser included offense.  *See Bradley v. Duncan*, 315 F.3d 1091, 1098-1101 (9th Cir. 2002) (finding federal due process violation where defendant's request for instruction on the only theory of defense was denied); *Solis*, 219 F.3d at 929.

In addition to the possibility of demonstrating a due process violation based on the failure to instruct on a theory of the defense, clearly established federal law provides that, in order to establish a violation of his federal due process rights by the failure to give a requested jury instruction, Harmon must demonstrate that the instruction should have been given, and that its omission "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Where failure to give an instruction is in issue, the burden on the petitioner is "especially heavy."  *Kibbe*, 431 U.S. 155.  Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

Harmon has not carried his heavy burden of showing that the instruction should have been given because, as the Court of Appeal noted, there was insufficient evidence for a reasonable jury to find the elements of the lesser included offenses, and he has not shown that the omission of the instructions infected the entire trial with unfairness.  At trial, Harmon testified that he did not recognize the victim and denied kidnapping or raping her.  The victim testified that Harmon forced her into a breezeway behind buildings and raped her.  Neither of these factual scenarious constitute simple kidnapping, attempted aggravated kidnapping, or

13

attempted rape. Additionally, even assuming an instructional error occurred, the Court finds that Harmon has failed to establish that such an error was harmful. Under the circumstances presented in this case, it is clear that the failure to instruct in this regard could not have had any adverse effect whatsoever on the jury's decision, much less the "substantial and injurious effect" required to show the error was harmful. *Brecht*, 507 U.S. at 637; *Roy*, 519 U.S. at 5. Accordingly, Harmon is not entitled to relief on this claim.

<u>Claim 4: Sentencing Error–Violation of *Appendi/Blakely*</u>

Finally, Harmon argues that the trial court erred by imposing the upper term based on "Mr. Harmon's three prior convictions, which were found by the judge rather than by the jury, and the jury made no findings as to whether they were numerous or of increasing seriousness, or whether they outweighed mitigating factors, as required by California law."

In *Apprendi*, the United States Supreme Court held that, regardless of its label as a "sentencing factor," any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum among other things must be "proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Supreme Court held that the "statutory maximum" for *Apprendi* purposes "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . . ." 542 U.S. at 303 (emphasis omitted). In *Cunningham*, the Supreme Court held that a California judge's imposition of an upper term sentence based on facts found by the judge rather than the jury violated the Constitution. 549 U.S. at 293.

Harmon's sentencing claim is without merit because a sentencing judge's imposition of an upper term sentence based upon prior convictions does not violate *Cunningham*. In endorsing

14

a "prior conviction exception," the *Apprendi* Court cited its earlier decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *Apprendi*, 530 U.S. at 487-90. In *Almendarez-Torres*, the Court ruled that an indictment was not defective for failing to charge the fact of a prior conviction used as a sentence enhancement on the ground that the prior conviction was not an element of the offense. *Almendarez-Torres*, 523 U.S. at 238-47. Both *Cunningham* and *Blakely* reaffirm the holding in *Apprendi* that "[o]ther than the fact of a prior conviction," a jury must decide any fact that increases punishment beyond the statutory maximum using a beyond a reasonable doubt standard. *See Cunningham*, 549 U.S. at 288-89; *Blakely*, 542 U.S. at 301; *see also Butler v. Curry*, 528 F.3d 624, 643-44 (9th Cir. 2008) ("we have repeatedly recognized our obligation to apply the *Almendarez-Torres* exception").

Under California law, "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." *See People v. Black*, 161 P.3d 1130, 1138-39 (Cal. 2007); *People v. Osband*, 919 P.2d 640, 709 (Cal. 1996); *see also Rosenblum v. Yates*, 489 F. App'x 165, 166 (9th Cir. 2012). This Court must defer to this principle of state law. *See Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008). Because the Constitution did not forbid the sentencing court from imposing an upper term based on Harmon's prior convictions, his *Apprendi/Blakely* claim is not colorable. *See Rosenblum*, 489 F. App'x at 166; *Chambers v. California*, No. CIV S-08-2290, 2010 WL 5200943, at *3 (E.D.Cal. Dec. 15, 2010) (where sentencing court imposed upper term based on petitioner's prior convictions, *Cunningham* challenge to sentence not colorable).

V. CONCLUSION AND ORDER

Harmon is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 26, 2014.

                                                  /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge